ROBERT M. MURPHY, Judge.
|2M.H. was adjudicated Family in Need of Services (“FINS”), minor ungovernable pursuant to La. Ch.C. art. 730(2) on May 5, 2012 and subsequently adjudicated delinquent for resisting an officer with force or violence in violation of La. R.S. 14:108.2 on December 5, 2012. The Louisiana Department of Public Safety and Corrections, Youth Service, Office of Juvenile Justice (“the OJJ”) appeals the juvenile court’s March 7, 2013 orders, placing M.H. in the protective custody of the OJJ for a period of time that exceeds the suspended ninety day disposition previously ordered by the court. For the reasons that follow, we vacate the juvenile court’s March 7, 2013 orders granting custody of M.H. to the OJJ for out-of-home placement in a residential treatment facility or group home and remand for further proceedings.
FACTS AND PROCEDURAL BACKGROUND
On April 4, 2012, the Jefferson Parish District Attorney filed a delinquency peti *569 tion in juvenile court, Petition A, charging M.H. with theft of currency valued under $500.00 in violation of La. R.S. 14:67. The petition alleged that M.H. stole $45.00 from her mother’s wallet and $200.00 from her grandmother. The juvenile denied the allegations at her appearance to answer on April 5, 2012. On May 2, 2012, the State amended the theft charge to allege that M.H. was ungovernable, Family in Need of Services under La. Ch.C. art. 730(2). On that same day, M.H. |swas adjudicated “Family in Need of Services,” and the juvenile court placed M.H. on “trackers,” and ordered a predisposition investigation (“PDI”).
On May 7, 2012, a warrant was issued for the juvenile’s arrest after her mother reported that the juvenile absconded from her residence and her whereabouts were unknown. The arrest warrant was satisfied with M.H.’s arrest for contempt of court on May 15, 2012. The juvenile court released M.H. to her mother and set a disposition hearing for June 28, 2012. Pri- or to the disposition hearing, a “FINS Report to the Court” and a Placement Prevention Case Plan Addendum were filed with the court, recommending that M.H. be placed on active probation and that she was not a candidate for foster care at the time.
The disposition hearing was held on July 19, 2012. The juvenile court placed M.H. on active probation for one year, beginning on July 19, 2012, for the offense of La. Ch.C. art. 730(2), minor ungovernable. A Family in Need of Services contract was executed by M.H., her mother, her attorney, the probation officer, and the trial judge, Judge Andrea P. Janzen, and made the judgment of the court. The contract set forth general and special conditions of probation.
Thereafter, on September 11, 2012, the juvenile’s probation officer filed a Rule to Show Cause on Constructive Contempt. The probation officer requested that the juvenile be held in constructive contempt of court for failure to observe the stated conditions of her probation. Specifically, the officer alleged that on September 8, 2012, the juvenile left her mother’s home without permission, that she did not attend school on September 10, 2012, and that she failed to notify Probation of her whereabouts. On September 13, 2012, the juvenile court held M.H. in contempt of court for violating the conditions of her probation, and “sentenced” her to 15 days in detention with credit for time served. This |/‘sentence” was suspended based upon M.H. completing 15 days on electronic monitoring program (“EMP”).
Subsequently, on October 1, 2012, M.H.’s probation officer filed another Rule to Show Cause on Constructive Contempt, alleging that M.H. violated her probation. The probation officer complained that M.H. violated EMP on September 20, 2012, by not returning home until 8:42 p.m. M.H. told Probation that she had flag team and basketball practice, but Probation confirmed she did not play basketball and only attended five minutes of flag team practice. Instead, it was learned that the juvenile attended a volleyball game that she was not given permission to attend. Further, the officer provided that the juvenile left her mother’s house at 6:22 a.m. on September 28, 2012, to attend school and did not return home after early dismissal from school. On October 2, 2012, the juvenile court found M.H. to be in constructive contempt and sentenced her to 22 days of GPS (“global positioning system”) tracking device supervision and to two weekends in a detention facility.
Thereafter, M.H. was again brought before the juvenile court on a Rule to Show Cause on Constructive Contempt. Specifically, on November 5, 2012, M.H.’s proba *570 tion officer alleged that she had left her mother’s vehicle on October 31, 2012, without her permission and that she did not attend school on November 2, 2012. The probation officer also indicated that the juvenile failed to notify Probation of her whereabouts. When M.H. was arrested on the constructive contempt warrant on November 5, 2012,. she kicked the arresting officer in the leg. As a result, the Jefferson Parish District Attorney filed a delinquency petition, | ^Petition C, charging M.H. with resisting an officer with force or violence in violation of La. R.S. MriOS^.[1]
On November 8, 2012, the juvenile court held a review hearing and a contempt hearing regarding Petition A. The judge held M.H. in contempt of court and sentenced her to 15 days in detention, with credit for time served. The judge further instructed M.H. that if her behavior did not improve, she would be placed out of the home. Accordingly, the judge ordered a psychological evaluation of M.H. to determine whether out-of-home placement was appropriate.
On December 5, 2012, the juvenile court held a review hearing regarding Petition A, wherein no problems were reported at that time. Specifically, the report regarding M.H.’s psychological evaluation recommended continued in-home placement. The Division of Probation also filed a Review Summary, recommending that M.H. remain on active probation. On the same date, M.H. admitted to the resisting an officer with force or violence charge of Petition C.
Thereafter, on December 27, 2012, a review hearing was conducted regarding Petition A. It was determined that the minor was doing well at home and school, with no reported violations. On the same day, M.H. was adjudicated delinquent for resisting an officer with force or violence, as charged in Petition C. The court entered a judgment of disposition, ordering M.H. to serve 90 days with the Office of Juvenile Justice (“OJJ”). However, this disposition was suspended, and M.H. was placed on active probation for 18 months. A probation contract was executed and made the judgment of the court.
In the months following M.H.’s adjudication on Petition C, she was found to be in constructive contempt of court on three separate occasions for probation |^violations on January 24, 2013, February 26, 2013 and March 7, 2013. The probation violations consisted of (1) implicating herself in the theft of property on January 24, 2013; (2) failing to attend school and failing to return home on February 26, 2013; and (3) failing a drug test on March 7, 2013. On each of the three contempt hearings, the juvenile court sentenced M.H. to 15 days in detention at Rivarde Detention Center, with credit for time served.
During the February 26, 2013 contempt hearing, the judge admonished M.H. that she had already been warned during a previous contempt hearing on November 8, 2012, that she would be placed out of the home if her behavior did not improve. Accordingly, the judge ordered an updated psychological evaluation to determine whether out-of-home placement would now be appropriate, noting that M.H. was looking at either 90 days in secure custody or until her eighteenth birthday in non-secure custody. In addition, the judge ordered M.H.’s case to be re-staffed with the OJJ and instructed the parties to report back for a review hearing on March 7, 2013, “to *571 decide what we’re going to do with her before she gets out of Rivarde.”
However, in the interim, M.H. tested positive for drugs while serving her 15-day sentence at Rivarde. As a result, the March 7, 2013 review hearing was also set for a constructive contempt hearing related to the positive drug test probation violation, for which, M.H. was found to be in contempt of court and sentenced to 15 days detention in Rivarde, with credit for time served. During the review hearing on March 7, 2013, M.H.’s probation officer testified that the updated psychological evaluation recommended that she be placed out of the home. The psychological evaluation specifically recommended that M.H. be considered for out-of-home placement in a structured group home. M.H.’s mother also testified at the hearing and requested that M.H. be temporarily placed out of the home.
|7The judge noted that reasonable efforts had been made to avoid removing M.H. from her mother’s custody and discussed the specific efforts made and the assistance provided in the matter. Accordingly, the court placed M.H. in the custody of the OJJ pursuant to the recommendation of the psychological evaluation. The court ordered that she be placed in a structured residential treatment facility or group home, preferably outside of the New Orleans area so she would not continue to run away, noting that she puts herself and possibly the community at risk by being on the streets. The court gave the OJJ two weeks to place the juvenile and ordered that reviews would be conducted every 30 days to determine M.H.’s progress in her placement. The judge instructed M.H. that “[a]s soon as your behavior gets back under control, and you can demonstrate to us that you are trustworthy again, I’ll let you go back home.”
The court issued two orders on March 7, 2013, placing M.H. in the non-secure custody of the OJJ — a Delinquency Continued Custody Hearing Order and an Order Granting Custody. The Order Granting Custody placed M.H. in the protective custody of the OJJ to be kept within the jurisdiction of the court pending further orders. The Delinquency Continued Custody Hearing Order provided that M.H.’s sentence for Petition A was “7/18/13” (reflecting the one year of probation M.H. received on Petition A) and her sentence for Petition C was “6/26/14” (reflecting the 18 months of probation M.H. received on Petition C). The Order further provided that pursuant to a continued custody hearing conducted in accordance with La. Ch.C. art. 819, M.H. was to be placed in the non-secure custody of the OJJ for placement in a residential treatment facility or group home outside of the New Orleans area. The Order also set a review hearing for March 21, 2013.
[sOn March 21, 2013, a review of placement hearing was conducted, as to Petitions A and C, and it was learned that M.H. had been placed in a Louisiana mentor home in Alexandria. Shawn Herbert of the OJJ testified that the length of M.H.’s stay was dependent upon her behavior, noting that the average length of stay was four to six months. The court ordered that M.H. be enrolled in school by Monday morning, and that ongoing probation fees be suspended while the minor was in the custody of the OJJ. The court explained that the probation fees would be suspended from March 7th until the juvenile returned to DJS supervision.
On March 25, 2013, the OJJ filed a motion and notice of appeal from the March 7, 2013 Order, placing M.H. in the protective custody of the OJJ. The appeal was granted on the following date, and the Order of March 7, 2013, which placed M.H. *572 in the protective custody of the OJJ, was stayed. This appeal now follows.
ASSIGNMENTS OF ERROR
On appeal, the OJJ raises the following assignments of error:
1. It is error for a youth to be placed in the custody of the Office of Juvenile Justice for a period of time that exceeds the suspended ninety day commitment previously ordered by the Court.
2. It is error for a youth to be placed in the protective custody of the Office of Juvenile Justice.
DISCUSSION
In its first assignment of error, the OJJ argues that the juvenile court erred by placing M.H. in its custody for a period of time that exceeds the suspended 90-day commitment set forth in the court’s original disposition. Specifically, the OJJ contends that the juvenile court revoked M.H.’s probation on March 7, 2013, when it placed her in the non-secure custody of the OJJ pursuant to the Delinquency Continued Custody Hearing Order and the Order granting custody. The OJJ argues |9that under La. Ch.C. art. 915, the juvenile court was limited to reinstating M.H.’s original suspended 90-day commitment, with credit for time served. La. Ch.C. art. 915 provides as follows:
A.When revoking a previous order of probation, the court may reinstate the original suspended or deferred disposition order and commit the child to the Department of Public Safety and Corrections for the term of that order, with credit for any time served in secure detention prior to the revocation hearing and with or without credit for time served on probation, in the discretion of the court. In no event shall the term of commitment exceed the maximum term of imprisonment for the offense forming the basis for the original adjudication.
B. When finding a child in direct or constructive contempt of court, commitment for each contempt shall not exceed fifteen days, including time spent in detention for the contempt prior to adjudication for contempt.
C. When the conduct alleged as the basis for probation revocation also constitutes a delinquent act, a petition shall be filed and an adjudication hearing scheduled for resolution of the new offense. If the child is adjudicated delinquent on the new petition, the order of disposition may include any sanction authorized by this Title as well as the revocation of the child’s probation and imposition of any suspended disposition originally ordered.
Rather than reinstating M.H.’s original 90-day disposition in accordance with La. Ch.C. art. 915, the OJJ contends that the juvenile court erroneously committed M.H. to its custody for a period of time that exceeds her 90-day suspended sentence. In fact, the OJJ argues that the court committed M.H. to its custody without specifying the maximum duration of the disposition. Although the OJJ admits that the March 7, 2013 Delinquency Continued Custody Hearing Order “appears” to specify that the duration of M.H.’s disposition concludes on July 18, 2013 for Petition A and on June 26, 2014 for Petition C, it argues that these commitment periods nonetheless violate La. Ch.C. art. 915 because they exceed M.H.’s original 90-day disposition.
|inAs an initial matter, we note that the OJJ bases its arguments on the notion that the juvenile court placed M.H. in its protective custody on March 7, 2013, after revoking her probation, as provided in La. Ch.C. art. 915. However, there is no indication in the record that the court actually *573 revoked M.H.’s probation in the orders at issue. Instead, the record shows that the court held a “constructive contempt hearing” on February 26, 2013, and a “review hearing” as well as a “constructive contempt hearing” on March 7, 2018. During the February 26, 2013 constructive contempt hearing for M.H.’s alleged probation violation, the court ordered M.H. to serve 15 days in Rivarde, as well as an updated psychological evaluation to assess the option of out-of-home placement for M.H. The transcript from the February 26, 2013 hearing reveals that the judge might have contemplated revoking M.H.’s probation. Specifically, the judge noted that “[M.H.] has a suspended sentence on the resisting an officer charge of 90 days. She could get 90 days in secure custody.” Furthermore, the judge warned M.H. that “my court reporter is going to tell me whether it’s 9 months — I mean 90 days or 6 months that you are looking at out-of-home placement for secure custody. And I can keep you until your 18th birthday in a non-secure facility.” Despite these statements, the judge set the matter for a review hearing — not a revocation hearing — on March 7, 2013 to decide what they were “going to do with [M.H.] before she gets out of Rivarde.” In the interim, the March 7, 2013 hearing was also set for a constructive contempt hearing due to M.H.’s recent positive drug test result.
During the March 7, 2013 review/constructive contempt hearing, the court made no mention of probation revocation. Rather, the court sentenced M.H. to 15 days detention in Rivarde in connection with the constructive contempt finding. As for the review hearing, the court concluded that M.H. put herself, and possibly the community, at risk by remaining on the street. Therefore, the court issued the | n Delinquency Continued Custody Hearing Order, placing M.H. in the non-secure custody of the OJJ pursuant to the recommendation of the psychological evaluation. The Order further held that M.H. be placed in a residential treatment facility or group home outside of the New Orleans area so she cannot continue to run away. On the same date, the court issued the Order granting custody, which placed M.H. in the protective custody of the OJJ pending further orders from the court. Neither of the two orders reference revoking M.H.’s probation.
Contrary to the OJJ’s argument on appeal, our review of the record shows that it is completely devoid of any indication of probation revocation. There is no evidence of a motion to revoke, a revocation hearing or any waiver of M.H.’s right to such a hearing, as provided in La. Ch.C. art. 913.[2] Because nothing in the record specifically suggests that the juvenile court revoked M.H.’s probation through its issuance of the March 7, 2013 orders, we find no error in the juvenile court’s failure to adhere to the probation revocation requirements set forth in La. Ch.C. art. 915.
The question remains, however, as to whether the juvenile court erred in failing to specify a maximum duration of the March 7, 2013 disposition. Under La. Ch.C. art. 903(B)(6), a judgment of disposition is required to specify “[t]he maximum duration of the disposition, and, if committed to the custody of the Department of Public Safety and Corrections, the maximum term of commitment.” See State ex reí. S.D., 01-670 (La.App. 5 Cir. 1/29/02); 807 So.2d 1138, 1146; citing La. Ch.C. art. *574 903(B)(6). Further, under La. Ch.C. art. 900(A), “[n]o judgment of disposition shall remain in force for a period exceeding the maximum term of imprisonment for the offense which forms the basis of the adjudication.” 112/⅛; citing La. Ch.C. art. 900(A). In this case, M.H. was adjudicated delinquent under La. R.S. 14:108.2 for resisting an officer with force or violence, for which, the maximum term of imprisonment is three years.
Neither the Delinquency Continued Custody Hearing Order, nor the Order granting custody specify the duration of the disposition placing M.H. in the non-secure custody of the OJJ. Although the Delinquency Continued Custody Hearing Order provides that M.H.’s sentence on Petition A is “7/18/13” and her sentence on Petition C is “6/26/14,” we find that these dates relate to the conclusion of M.H.’s separate terms of probation of one year on Petition A, and 18 months on Petition C — not to the duration of M.H.’s out-of-home placement in OJJ’s custody. In fact, after the court ordered that M.H. be placed in the OJJ’s custody, the judge instructed M.H. that “[a]s soon as your behavior gets back under control, and you can demonstrate to us that you are trustworthy again, I’ll let you go back home.”
In State ex reí. S.D., we found the disposition to be deficient for placing a juvenile in the custody of the Department of Public Safety and Corrections/Office of Youth Development for placement in a residential treatment facility, without specifying the maximum term of commitment as required by La. Ch.C. art. 903(B)(6). State ex rel. S.D., 807 So.2d at 1146. In the instant case, the March 7, 2013 disposition is similarly deficient because it also places a juvenile, M.H., in the custody of the State, the OJJ, for placement in a residential treatment facility or group home, without specifying the maximum duration of M.H.’s commitment as required by La. Ch.C. art. 903(B)(6). Furthermore, the March 7, 2013 disposition also fails to comply with La. Ch.C. art. 900 because it potentially allows the commitment to remain in effect for longer than three years, which is the maximum term of imprisonment for resisting an officer with force or violence in violation of 113La. R.S. 14:108.2. Accordingly, we find that the juvenile court erred in failing to specify the maximum duration of the March 7, 2013 disposition.
Nevertheless, we are still left with the question regarding what authority the juvenile court relied upon in placing M.H. in the non-secure custody of the OJJ for placement in a residential treatment facility or group home on March 7, 2013. Notably, the Delinquency Continued Custody Hearing Order provides that “[tjhis matter came before the court for continued custody hearing pursuant to Louisiana Children’s Code article 819.” La. Ch.C. art. 819 provides as follows:
If a child is not released to the care of his parents, a hearing shall be held by the court within three days after the child’s entry into the juvenile detention center or shelter care facility. If the hearing is not held, the child shall be released unless the hearing is continued at the request of the child.
Although the court called the March 7, 2013 hearing a continued custody hearing in its order, it was not such a hearing. La. Ch.C. art. 820 defines a continued custody hearing as one where “the state shall prove that there is probable cause that the child has committed a delinquent act or has violated a condition of his probation or release.” At the March 7, 2013 review/constructive contempt hearing, there was no probable cause determination regarding whether M.H. had committed a delinquent act or a probation violation. Although the Delinquency Continued Cus *575 tody Hearing Order provides that continued custody is necessary because it is contrary to the welfare of - M.H. to remain at home, such a finding is not an acceptable basis for continued custody under La. Ch.C. art. 820. Rather, a probable cause determination is required. Moreover, as we have noted, the juvenile court clearly set the matter for a “review hearing” and a “constructive contempt hearing” on March 7, 2013 — not a “continued custody hearing.” The court did not employ the proper procedure for a continued custody hearing, as set forth in La. Ch.C. art. 819, et seq.
114Eecause the hearing of March 7, 2013 was not a “continued custody hearing” within the meaning of Chapter 5 of Title VIII of the Children’s Code, we find that the juvenile court was without authority to issue the Delinquency Continued Custody Order on March 7, 2013, and therefore, we must vacate that order. In addition, because we cannot determine from the record, and will not assume, what authority the juvenile court intended to rely upon in placing M.H. in the custody of the.OJJ, we must also vacate the March 7, 2013 Order granting custody, and remand the matter for further proceedings. Accordingly, the issue raised in the OJJ’s second assignment of error is rendered moot.
ERROR PATENT DISCUSSION
Although there is no statutory provision that affirmatively grants courts the authority to review juvenile delinquency proceedings for patent error, this Court has conducted limited reviews for error patent in the past. State ex reí. Z.S., 01-1099 (La.App. 5 Cir. 2/26/02); 811 So.2d 1003, 1008. However, because the OJJ has filed the appeal in this matter, and not the juvenile M.H., we decline to conduct an error patent review of this matter.
CONCLUSION
Therefore, for the reasons provided above, we find that the juvenile court mistakenly relied upon La. Ch.C. art. 819 in ordering that M.H. be placed in the non-secure custody of the OJJ for placement in a residential treatment facility or group home on March 7, 2013. Accordingly, the March 7, 2013 Delinquency Continued Custody Hearing Order and the March 7, 2013 Order granting custody are hereby vacated, and the matter is remanded for further proceedings.
VACATED AND REMANDED

. On the same date, another delinquency petition was filed, Petition D, charging M.H. with battery of a police officer on or about November 5, 2012, in violation of La. R.S. 14:34.2. This petition was later dismissed after M.H. admitted to the charge specified in Petition C.

. La. Ch.C. art. 913 provides that "[a] motion to revoke a child’s probation shall be accompanied by a supporting affidavit specifying the claimed violations which form the basis of the revocation,” and "the court shall conduct a contradictory hearing,” unless the child waives his right.